**JUDGE HARJANI**

AO 91 (Rev. 11/11) Criminal Complaint

A SA ~~~~ Pinay (312) 886-7631



**FILED**

9/21/2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

VINCENT STORME

CASE NUMBER:
**UNDER SEAL** **20 CR 650**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. From on or about May 7, 2020 to on or about September 21, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2261A | did, with intent to harass and intimidate another person, use any interactive computer service and electronic communication service and electronic computer system of interstate commerce, and any other facility of interstate and foreign commerce, including the internet, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Individual A. |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

MICHAEL C. DEVINE, Special Agent
Federal Bureau of Investigation

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: September 21, 2020

_Judge's signature_

City and state: Chicago, Illinois

SUNIL R. HARJANI, U.S. Magistrate Judge
_Printed name and title_

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, MICHAEL C. DEVINE, being duly sworn, state as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately June 2016. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to violations of federal criminal law, including computer crimes, in violation of 18 U.S.C. § 1030 (the "Computer Fraud and Abuse Act"). I have received specialized training in those areas.

2.     This affidavit is submitted in support of a criminal complaint alleging that VINCENT STORME has violated Title 18, United States Code, Section 2261A. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging STORME with cyberstalking, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.     This affidavit is based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts.

## I.     BACKGROUND

### A.     Cyberstalking (18 U.S.C. § 2261A)

4.     A violation of Title 18, United States Code, Section 2261A(2), requires proof that an individual:

(1) With the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person;

(2) Used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that:

(a) Placed that person in reasonable fear of death of or serious bodily injury to that person, an immediate family member, or a spouse or intimate partner, or that person's animal, or

(b) Caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person, an immediate family member, or a spouse or intimate partner.

## II.     FACTS SUPPORTING PROBABLE CAUSE

### A.     Summary

5.     On or about June 10, 2020, a 26-year-old female ("Individual A") submitted an online report to the FBI via the Internet Crime Complaint Center ("IC3") alleging that she was the victim of an online cyberstalking campaign.

According to Individual A, beginning in or around January 2020, she began a romantic relationship with a 32-year-old male, whom she knew as Vincent STORME.[1]

6.      On or about May 7, 2020, Individual A ended the relationship with STORME. Soon thereafter, STORME began a campaign of threats and harassment against her. According to Individual A, STORME identified social media and dating profiles that Individual A created in private by accessing her phone without her knowledge or consent. STORME then used this information along with Individual A's private messages and data, including nude photographs of Individual A, and disseminated them to her family, friends, and co-workers through various social media platforms. Individual A further reported in the IC3 complaint the severe emotional distress she experienced as a result of this harassment, including the following:

> I have left Chicago to stay with my family out of fear of this man. He has physically overpowered me before, and his unhinged behavior online keeps escalating. I am terrified. I have missed two weeks of work and lost 10 pounds since May 31. The emotional distress is unbearable and I have sought therapy and the help of lawyers and police officers.

7.      On or about June 30, 2020, the FBI interviewed Individual A, who confirmed the contents of her online report, and provided the FBI with screenshots documenting the online activities alleged in the report. According to Individual A, she learned through her family, friends, and co-workers that the website www.[Individual A First and Last Name].com ("Subject Account 5") was disseminated

---

[1] According to records obtained from the Fayette County Clerk, Kentucky, Chen Glen SPANDAU legally changed his name to Vincent Adrien STORME on or about September 14, 2009.

to them through various social media and email accounts. These accounts were created in Individual A's name and listed Subject Account 5 as Individual A's personal webpage, including Instagram accounts @Who.Is.[Individual A First Name Middle Name] ("Subject Account 1") and @CheaterCheater[Individual A First Name] ("Subject Account 2"), a Facebook account using screen name "[Individual A First Name Moniker]."[2] ("Subject Account 3"), and Google email account [Individual A First Name Middle Name Last Name]@gmail.com ("Subject Account 4") (collectively with Subject Account 5, the "Subject Accounts").[3] Individual A confirmed that she did not create the Subject Accounts nor authorize the creation of the accounts, despite these accounts being in her name.

8.      As detailed below, there is probable cause to show that STORME created each of the Subject Accounts, and based upon the content of the Subject Accounts and his communications with Individual A's family members and friends, that he did so with the intent to cause Individual A and her family and friends substantial emotional distress.

---

[2] According to Individual A, she used variations of the same moniker as a name on various social media sites ("Individual A Moniker").

[3] On or about August 27, 2020, Magistrate Judge Sheila M. Finnegan issued search warrants for Subject Accounts 1-3 (20 M 452), Subject Account 4 (20 M 454), and Subject Account 5 (20 M 453). On or about September 9, 2020, Magistrate Judge Susan E. Cox issued a seizure warrant for Subject Account 5 (20 M 469).

**B.     The Website: Subject Account 5**

9.      According to Namecheap,[4] Subject Account 5 was created on or about June 4, 2020 by STORME, using Namecheap User ID: vincentstorme, 1523848, listing STORME's home address (verified via open source and law enforcement databases), the STORME Phone number,[5] and the e-mail account me@vincentstorme.com.

10.     According to Individual A, on or about June 10, 2020, she learned about the existence of Subject Account 5, which used her real name, but which she did not register.

11.     Based on my review of Subject Account 5, it contained an over 9,000-word document dedicated to the relationship between Individual A and STORME, which, Individual A stated was not drafted by Individual A, and appeared to have been drafted by STORME.

12.     The document begins with the following language: "This is [Individual A]. She is a liar, a cheater, a manipulator, abuser, and exhibits many covert narcissistic traits. This site serves as a cautionary warning to inform people that enter [Individual A]'s life to her past and what she is capable of."

13.     The document ends with the following language: "I simply hope this will serve as a warning that [Individual A] will **lie, cheat, play the victim, manipulate,**

---

[4] According to its website, Namecheap is an ICAAN-accredited domain registrar and technology company. Namecheap manages over 10 million domains and is among the top domain registrars and web hosting providers in the world.

[5]  According to law enforcement databases and Individual A, XXX-XXX-8546 is registered to STORME (the "STORME Phone").

**blindside, abuse, gaslight**, and more to those she is suppose care for the most. At the end of the day, **[Individual A] is not a good person**. To [Individual A] – your shitty actions and how you poorly treat people has consequences. **This will follow you forever, I promise you**." (Emphasis in original).

14. Within the body of the document on Subject Account 5, included, among other things (1) screen shots of dozens of STORME's text communications with Individual A, some of which are intimate and sexually explicit; (2) sexually explicit details of Individual A's sexual preferences; (3) sexually explicit photos of Individual A; (4) screen shots and identifying information from private social media and dating profiles created by Individual A; and (5) a litany of accusations concerning Individual A's alleged infidelity and deceit.

15. The document states that the purpose was as follows: "I believe the only way people that behave poorly and inhumanely will stop their poor behaviors is to call them out and make their transgressions known to everyone."

16. The document states that some information contained on Subject Account 5 was obtained from Individual A's phone, by stating as follows: "On February 29th while [Individual A] was over and sleeping next to me in bed I went through her phone," indicating STORME accessed Individual A's phone without her knowledge or consent. Individual A confirmed that the information contained on Subject Account 5 were contained on her phone, that much of the information was not publicly available, and obtained without her permission.

17.     On or about July 22, 2020, Individual A's sister informed the FBI that she received three requests for counseling sessions through two online web portals. As a licensed counselor in the state of Michigan, Individual A's sister offers the ability to schedule counseling appointments through her company's websites. Two of the three requests were identical. The request simply stated "I think this is your sister" with a link to Subject Account 5, indicating the first two requests were caused by STORME. The third request was from an Adrien SPANDAU, requesting a 20-minute video counseling session in order to assist SPANDAU with a recent breakup. As referenced above in footnote 1, STORME changed his name from Chen Glen SPANDAU to Vincent Adrien STORME in 2009, indicating the third request was likely sent from STORME.

## C.     Instagram (Subject Accounts 1 and 2)

18.     According to Instagram, Subject Account 1 was created on about June 9, 2019. As of no later than May 31, 2020, the account had the screen name "who is [Individual A First Name Middle Name]." The account was deactivated on or about June 4, 2020.[6] The account was created using e-mail address instagram@vsrev.com and listed the STORME Phone as the verified telephone number.[7] The first post on

---

[6]  Based on my training and experience, I know that subscriber details for an Instagram account can be altered, including the name in which the account is registered. Therefore, it is reasonable to believe that Subject Account 1 was established before STORME and Individual A began their relationship in January 2020, but altered by STORME when he took over the account.

[7]  According to Namecheap, the domain vsrev.com, which was used to create the "instagram@vsrev.com" email address, was listed as an additional domain registered through Namecheap under the same account that created Subject Account 5, which as detailed below was created by STORME. Also, based on my training and experience, I know that a verified

Subject Account 1 after May 31, 2020 was a narrative image that began with "Hello My name is Vincent."

19. According to Instagram, Subject Account 2 was created on or about May 15, 2020, under the name "[Individual A First Name Middle Name]," and was deactivated on or about June 4, 2020. The account was created with the STORME Phone as the verified telephone number, but without an email address.

20. Deactivation and four additional logins for Subject Account 1 occurred from IP address 207.237.210.173 ("IP Address 1"). Creation, deactivation, and login activity for Subject Account 2 all originated from IP Address 1. An open source WHOIS search for IP Address 1 revealed that IP Address 1 belonged to RCN Internet Service Provider.[8] According to RCN, the IP Address was assigned to STORME.

21. Based on the above information, I believe that Subject Accounts 1 and 2 were created by STORME.

22. According to Instagram, on or about May 31, 2020, the user of Subject Account 1 requested to follow all of Individual A's Instagram contacts, including Individual A's two sisters (one of whom is a minor), ex-boyfriend, co-workers, and other family relatives. The FBI interviewed Individual A's adult sister and

---

telephone number indicates that the user responded to a text verification notice sent to the listed phone number.

[8] Based on my training and experience, I know that a WHOIS record identifies the registrant of a domain.

employment supervisor, both of whom confirmed receiving a follow request from Subject Account 1.

23. The FBI reviewed preserved screenshots of Subject Account 1 provided by Individual A, which showed it contained approximately 28 posts containing defamatory and private information regarding Individual A. Examples of these posts are narrative images directed towards Individual A's ex-boyfriend, co-workers and friends, screenshots of private and sexually charged conversations, webpage screenshots and social media account screenshots.[9] Subject Account 1 also contained multiple images of Individual A as well as a narrative image containing details of a Reddit account on which a nude image of Individual A was located.[10] Additionally, the first post on Subject Account 1 is a narrative image that begins with "Hello My name is Vincent." Much of the information and images posted on Subject Account 1 were obtained from Individual A's cell phone without her authorization.

24. According to Individual A's sister, around the same time, Individual A's sister received another follow request and direct message from Subject Account 2. The message received from Subject Account 2 was sent to multiple recipients, identified by Individual A as family, friends, and coworkers. The message contents explained that Subject Account 2 was created because the recipients of Subject Account 1 had blocked that account from communicating with them. Subject Account

---

[9] Based on my training and experience, I know that a narrative image is an image that contains words, phrases, or paragraphs that Instagram users can use to post to their feed.

[10] Reddit is an American social news aggregation, web content rating, and discussion website. Registered users can submit content such as links, text posts, and images which are then either voted up and down by other users.

2 contained posts that accused Individual A of infidelity and made further derogatory accusations against Individual A labeling her a liar and manipulator. Finally, screenshots of Individual A's dating website profiles were also sent to the recipients. Again, the information and images posted on Subject Account 2 were obtained from Individual A's cell phone without her authorization.

### D.    Facebook (Subject Account 3)

25.    According to Facebook, Subject Account 3 was created on or about November 29, 2012. As of in or around July 2020, the screen name was "[Individual A First Name Moniker]." The account was created using e-mail addresses synkte@gmail.com and chang.emakrs7@facebook.com. According to Google, synkte@gmail.com is an SMS-linked account to Subject Account 4 via the STORME phone, indicating STORME . No telephone numbers were listed. Facebook records indicate that this account was established many years before Individual A and STORME first met. Based on my training and experience, I know that subscriber details for a Facebook account can be altered to include the name in which the account is registered. Therefore, I believe that Subject Account 3 was established in 2012 and recently altered by STORME to resemble registration and ownership by Individual A.

26.    Subject Account 3 contained Individual A's true name and images within the body of the page. The page also contained a link to Subject Account 5 which was listed as the account's personal webpage. Individual A confirmed to the FBI that Subject Account 3 was not Individual A's legitimate Facebook page. A paragraph from Subject Account 5 also stated, "In a few short weeks anytime anyone searches for,

10

'[Individual A]' or '[Individual A Moniker]' this page will show up as a top search result." Based on my training and experience, I know that Facebook is one of the world's largest Internet entities. I also know that when someone conducts a Google search for a person's true name, if that individual possesses a Facebook page, that page will likely be a top search result. Therefore, I believe that STORME created Subject Account 3 to advertise the contents of Subject Account 5.

### E.    Google

27.    According to Google, Subject Account 4 was created on or about June 10, 2020, under the name "[Individual A First Name Last Name]." The account was created using the STORME Phone as a recovery telephone number. The creation, agreement to terms of service, and approximately 20 logins, all originated from IP Address 1. Based upon this information, Subject Account 4 was created by STORME.

28.    According to Individual A's father, on or about June 10, 2020, he received an e-mail at his work email account from Subject Account 4, which contained Individual A's name in the subject line. The body of the e-mail contained the phrase, "This is your daughter," followed by a link to Subject Account 5. The search warrant return for Subject Account 4 contained the original e-mail sent to Individual A's father.

29.    According to LinkedIn records, on or about June 11, 2020, a LinkedIn account was created in Individual A's true name. The LinkedIn account was registered from IP Address 1 using Subject Account 4, indicating it was created by STORME. The LinkedIn profile also contained Individual A's true employment

11

company name and logo. An interview with Individual A's direct employment supervisor indicated that Individual A's employment company sent LinkedIn a cease and desist letter, which based on my training and experience, was likely directed to Subject Account 4.

30.     According to Reddit records, on or about June 10, 2020, a Reddit account "[Individual A Moniker]1" was created. The account was registered from IP Address 1 using Subject Account 4, indicating it was created by STORME. According to XXX, the subReddit "/r/Regular Revenge/" posted Subject Account 5. According to Individual A, this account was used in an attempt to contact Individual A following her breakup from STORME.

### F.     STORME's Additional Harassing Conduct

31.     On or about June 10, 2020, Individual A filed a police report with the Chicago Police Department ("CPD") concerning the discovery and subsequent dissemination of content within Subject Account 5. In July 2020, Individual A filed two additional police reports with CPD, regarding incidents in July 2020 in which an individual visited Individual 's home and slashed Individual A's tires twice within the span of approximately five days.

32.     Video surveillance footage obtained from Individual A's property management company captured on or about July 17, 2020, depicted a man fitting the physical description of STORME engaging in the act of slashing the tires of Individual A's vehicle. Individual A stated that based on her review of the video footage of the individual slashing her tires, she was certain that the individual's appearance,

mannerisms and gait, were consistent with STORME. Further, the July 17, 2020 video surveillance revealed a silver McLaren sedan parked in front of Individual A's vehicle. According to Individual A, STORME drove a silver McLaren; and according to records obtained from the State of Florida Department of Highway Safety and Motor Vehicles, STORME purchased a silver McLaren on or about July 2, 2020 in Florida.

33.    As a result of the above-described incidents, on or about July 24, 2020, Individual A filed an order of protection against STORME.

34.    Based on my training and experience, and the investigation to date, I believe the above-described online content is evidence that STORME used the Subject Accounts to engage in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to Individual A and Individual A's family and friends.

13

## III. CONCLUSION

35.     Based on the foregoing, I respectfully submit that there is probable cause to believe the that from on or about May 7, 2020 to on or about September 21, 2020, defendant did, with intent to harass and intimidate another person, use any interactive computer service and electronic communication service and electronic computer system of interstate commerce, and any other facility of interstate and foreign commerce, including the internet, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Individual A, in violation of Title 18, United States Code, Section 2261A.

FURTHER AFFIANT SAYETH NOT.

MICHAEL C. DEVINE, Special Agent
Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone September 21, 2020.

Honorable SUNIL R. HARJANI
United States Magistrate Judge

14