IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff, | ) | Case Number: 20 CR 650 |
| | ) | |
|     v. | ) | |
| | ) | |
| VINCENT STORME | ) | |
|     Defendant. | ) | |

## MOTION TO DISMISS

**NOW COMES** the Defendant, Vincent Storme, by and through his attorneys, Gal Pissetzky and Adam Bolotin, and respectfully requests that this Honorable Court enter an Order dismissing the Indictment in that the 18 U.S.C. §2261A(2) charge violates the Free Speech Clause of the First Amendment as it applies to him. In support thereof, Mr. Storme files this motion and memorandum and states the following:

### BACKGROUND

On November 19, 2020, the government filed a two Count Indictment. Count One charges Mr. Storme with using various internet platforms to engage in conduct that would be reasonably expected to cause substantial emotional distress to Individual A and an immediate family member of Individual A, in violation of 18 U.S.C. §2261(A)(2). Count Two alleges Mr. Storme accessed a computer and thereby obtained information from Individual A's cell phone in furtherance of a criminal and tortious actin, namely Section 2261(A) as alleged in Count One.

According to the complaint, as it relates to the §2261(A)(2) charge, Mr. Storme allegedly created a website[1] that consisted of long written document that described Individual A and Storme's relationship with her. Dkt. No. 1 at 5. The document begins with referring to Individual

---

[1] The site the government refers to in the Complaint and forms the basis for the Indictment is actually a blog rather than a website. It was created using the blog creation tool www.jekyllrb.com.

1

A by her true name and describes her as a "liar, cheater, a manipulator, abuser, and exhibits many covert narcissistic traits." *Id.* The document's body contains screen shots of text messages (some of which are intimate and sexual in nature), descriptions of Individual A's sexual preferences, explanations of how Individual A was unfaithful to Mr. Storme and others, and information from Individual A's various social media and dating profiles. *Id.* at 6. The website contains truthful information, opinions, and it does not contain any lies or threats toward Individual A or anyone else.

The Complaint further alleges Mr. Storme created 2 Instagram accounts under the screen name "who is [Individual A's first name middle name]". *Id.* at 6. The accounts content consisted of screen shots of Individual A and Mr. Storme's conversations, screen shots of the webpage described above, and truthful posts that accused Individual A of infidelity. *Id.* at 9-10. One of the Instagram accounts sent images of Individual A's public online dating profiles. *Id.* at 10.

The complaint also alleges Mr. Storme created a Facebook account that contained Individual A's name and listed a link to the website. The complaint further alleges Mr. Storme created a Google account under the name [Individual A First Name Last Name] and used the account to email a link of the blog to Individual A's father. *Id.* at 11. The complaint further alleges Mr. Storme posted a link to website on Reddit.

## LEGAL STANDARD

The First Amendment prohibits Congress from making any law that "abridge[es] the freedom of speech." U.S. Const. amend. I. First Amendment protections extend to speech that makes others uncomfortable and challenges standards of good taste. *See e.g.*, *United States v. Stevens*, 130 S. Ct. 1577, 1585 (2010). Indeed, the Supreme Court consistently holds emotionally distressing or outrageous speech is protected. The internet has become the proverbial 'public

square' and there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to speech that occurs online. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997). In other words, "'basic principles of freedom of speech and press, like the First Amendment's command, do not vary' when a new and different medium for communication appears." *Brown v. Entm't Merch., Ass'n*, 564 U.S. 786, 790 (2011) (quoting *Joseph Burstync, Inc. v. Wilson*, 343 U.S. 495, 503 (1952).

The first step in analyzing laws that target speech is to determine whether the law is a content-based or content neutral restriction. *Reed v. Gilbert*, 576 U.S. 155, 165 (2015). Content-based laws, which target speech based on its communicative content, are presumptively unconstitutional. *United States v. Stevens*, 559 U.S. 460, 468 (2010). To be content-neutral, the law must not restrict speech "because of its message, its ideas, its subject matter, or its content." *Reed,* 576 U.S. at 163. Content based restrictions are subject to strict scrutiny. *Reed*, 576 U.S. at 163. To survive strict scrutiny, the government must show the law is narrowly tailored to serve a compelling state interest. *Id.*

## ARGUMENT

The indictment charges Mr. Storme with causing Individual A and an un-named family member substantial emotional distress by publishing, and later disseminating to the public, distasteful, but true, descriptions of Individual A and the two's relationship. The blog may very well be offensive and emotionally charged, however, Mr. Storme's distasteful commentary is not criminal. On the contrary, the government's charging of Mr. Storme for committing these acts is unlawful. The application of 18 U.S.C. §2261(A)(2) is, under these circumstances, a content-based restriction, that serves no compelling state interest, and therefore violates the First Amendment.

**I.     18 U.S.C. § 2262(A)(2) is a Content Based Restriction**

The Supreme Court's holding in *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000) provides proper guidance in determining whether the Indictment amounts to content-based restrictions. There, the Court reviewed a law that required cable operators to scramble sexually explicit channels in full or limit such programming to certain hours. *Playboy Entm't Grp., Inc.*, 529 U.S. at 806. Weighing whether the regulation amounted to a content-based restriction, the *Playboy* Court stressed rationale behind the regulation, *i.e.* the effect it would have on young viewers, could not be "justified without reference to the content of the regulated speech.'" *Id.* at 811 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The Court further asserted the regulation "'focuses *only* on the content of the speech and the direct impact that speech has on its listeners.'" *Id.* at 811-12 (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988) (opinion of O'Connor, J.). These circumstances, the Court held, are "the essence of content-based regulation." *Id.* at 812.

In comparison, the Indictment here charges Mr. Storme with posting content on a blog that allegedly caused Individual A substantial emotional distress. Just like the cable regulation, the charge cannot stand without looking to the specific content posted on the various forums, and requires an exacting focus on direct impact the words had on Individual A' sensibilities. The charge clearly exemplifies the exact facets the Supreme Court dubbed the essence of content-based restrictions twenty years ago. This court should follow this precedent and find the charges amount to content-based restrictions. In doing so, this court would not be the first to find § 2261(A) to be content-based.

In *United States v. Cassidy*, a Maryland district court granted the defendant's motion to dismiss an Indictment that charged the defendant with one count of interstate stalking in violation of 18 U.S.C. § 2261A(2)(A). 814 F.Supp.2d 574 (D. Md. 2011). The charge was based on

4

Cassidy's tweets and blog posts that caused A.Z. emotional distress. *Id.* at 578-79. Specifically, the tweets and posts included threats and derogatory statements directed at A.Z. including posts that demeaned her physical appearance, encouraged her to commit suicide, and described her as a prostitute. *Id.* at 588-91. A.Z. claimed the posts caused her substantial emotion distress so much so that she feared for her own safety. *Id.* at 579. A.Z. further alleged that the defendant's posts caused her not to leave her house for a year and half, except to see her psychiatrist. *Id.* at 579-80.

In determining whether the charge amounted to a content-based restriction, the *Cassidy* court focused on the portion of the statute that criminalized conduct that *causes substantial emotional distress*. *Id.* at 584. The causing of substantial emotional distress as charged in the indictment, the court held, "amounts to a content-based restriction because it limits speech on the basis of whether the speech is emotionally distress to A.Z." *Id.*

The Illinois Supreme Court recently applied a similar analysis in finding a state stalking statute, that set forth nearly identical language as Section 2261A92)(A), to be a content-based restriction. *People v. Relerford*, 2017 IL 121094. The Illinois stalking statute proscribed any course of conduct directed at a specific person that the defendant knew or should have known would cause a reasonable person to suffer other emotional distress. 720 ILCS 5/12-7.3(a)(1), (a)(2). 'Course of conduct' was defined as, amongst other acts, two or more acts in which the defendant directly or indirectly communicates to or about a person via electronic communications. 720 ILCS 5/12-7.3(c)(1). The statute further defined emotional distress as "significant mental suffering, anxiety, or alarm." 720 ILCS 5/12-7.3(c)(3).

Finding the law amounted to be a content-based restriction, the Court explained that "communications that are pleasing to the recipient due to their nature or substance are not prohibited, but communications that the speaker 'knows or should know' are distressing due to

5

their nature or substance are prohibited." *Id.* at ¶ 34. "Clear[ly] . . . the challenged statutory provision must be considered a content-based restriction," the Court held, "because it cannot be justified without reference to the content of the prohibited communications." *Id.* citing *Reed*, 135 S. Ct. at 2227.

Both the Maryland district court and Illinois Supreme Court cases are directly on point. Just like the indictment in *Cassidy*, the § 2261 charge here criminalizes Mr. Storme's internet posts because the effect they purportedly had on Individual A. And as the Illinois Supreme Court held, § 2261(A) has no quarrel with posts that would speak fondly of Individual A, but criminalizes critical language that allegedly distresses her. Such differentiation amounts to a content-based regulation that must satisfy strict scrutiny. Here, the government cannot overcome its high burden to prove that a restriction on Mr. Storme's speech furthered a compelling state interest and is narrowly tailored to achieve that interest.

**II.      Section 2261(A) Does Not Serve a Compelling State Interest**

To survive strict scrutiny, the government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171. Now more than ever, society has moved towards canceling speech that offends; however, the First Amendment forbids the government from enacting laws that criminalize speech simply because it offends. *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017). Indeed, "that idea strikes at the heart of the Frist Amendment." *Id.* The Supreme Court holds "time and again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'" *Id.* at 1763 (quoting *Street v. New York*, 394 U.S. 576, 592 (1969). "The proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'" *Id.* (quoting *United States v. Schwimmer*, 279 U.S. 644, 655 (1929) (Holmes, J., dissenting).

Put simply, the government's interest in protecting Individual A, an unnamed family member, or anyone for that matter, from speech that causes purported emotional distress does not amount to a compelling interest. Again, *Playboy* and *Cassidy* are instructive. In weighing whether the government's interest in protecting victims of emotional distressed caused by speech was compelling, the *Playboy* Court asserted that where the restriction's benefit is "to shield the sensibilities of listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists." *Playboy*, 529 U.S. at 813. "We are expected to protect our own sensibilities," the Court continued, "simply by averting [our] eyes." *Id.* Applying *Playboy's* analysis to the § 2261(A) charge, the *Cassidy* court similarly concluded A.Z. had the ability to protect her sensibilities by simply not visiting the defendant's blog and/or averting her eyes from his tweets. *Cassidy*, 814 F.Supp.2d at 587.

Just as the government sought to protect A.Z. from Cassidy's tweets, and the youth of America from Playboy's explicit content, Individual A had the ability to protect herself from Mr. Storme's speech by not visiting the blog-post and/or ignoring or blocking the social media accounts. Importantly, the government is not alleging that Mr. Storme ever sent Individual A any direct emails, links or other communications, let alone threatening ones. Instead, the Indictment is based solely upon allegations that Mr. Storme published his opinion of Individual A, which was backed by his factual experience with her, on the internet.

To be clear, nothing Mr. Storme wrote was false nor did he disclose confidential material. Notably, the complaint falsely accuses Mr. Storme of publishing a private naked photo of Individual A. That is false and misleading. Individual A posted the same unedited photo to a public Reddit forum months before Mr. Storme allegedly created the blog site. Unlike the uncensored photo Individual A posted on her Reddit post, the photo published on the blog was purposely

7

censored and blocked Individual A's entire body. Neither her breasts nor genitals are visible, and the image as posted could not have offended anyone.

Similarly, the blog's references to Individual A's dating profiles do not amount to disclosure of private information. Her dating profiles were publicly viewable to anyone who visited the various pages. Mr. Storme's alleged posting of a photo that was deliberately censored and description of Individual A's dating profiles is actually much less pervasive than Cassidy's acts. Cassidy defamed A.Z. when he accused her of being a prostitute, while Mr. Storme allegedly published truthful factual descriptions of how Individual A cheated on him and others. Though the blog bore insulting commentary, the government cannot outlaw Mr. Storme's alleged opinion simply because it disparaged Individual A.

*Purtell v. Mason,* 527 F.3d 615, (7th Cir. 2008), a case that arose from a neighborhood feud, provides insight. There, a homeowner parked his unsightly RV on his residential driveway. *Id.* at 616. The RV owner's neighbors then banded together and successfully convinced the village to enact an ordinance banning homeowners from storing RV's on their property. *Id.* at 617-18. In retaliation, the scorned RV owner erected wooden tombstones on his lawn that featured messages at the neighbors behind the ordinance. *Id.* at 618. The tombstones referred to the neighbors by name; described them as liars, drunks, wenches, and murders; and detailed their demise. *Id.*

In determining whether the First Amendment protected the tombstones' insults, the Seventh Circuit reviewed the progression of the 'fighting-words doctrine.' Under the doctrine, words that by their very utterance inflict injury or tend to incite an immediate breach of peace," are afforded no constitutional protection. *United States v. Chaplinksy v. New Hampshire¸* 315 U.S. 568, 572 (1942). As years went on, the Seventh Circuit noted, the Supreme Court "has either dropped the 'inflict-injury' alternative altogether or simply recited the full *Chaplinsky* definition

8

without further reference to any distinction between hurtful speech and speech that tends to prove an immediate breach of the peace. *Purtell*, 527 F.3d at 623 (collecting cases). Though the Supreme Court has not expressly overruled *Chaplinsky* or the fighting words doctrine, it "has never held that the government may, consistent with the First Amendment, regulate or punish speech the causes emotional injury but does *not* have a tendency to provoke an immediate breach of the peace." *Id.* at 624. Against this landscape, the *Purtell* court asserted "speech inflicting psychic trauma alone -without any tendency to provoke responsive violence or an immediate breach of the peace- does not lose constitutional protection under the fighting-words doctrine." *Id.* at 624. "Because the tombstones did not have an inherent tendency to incite an immediate breach of the peace," the court held, "they did not fall within that 'narrowly limited' class of unprotected speech defined by the fighting-words doctrine." *Id.* at 626.

Just like the tombstones, the website at issue here did not have any tendency to incite an immediate breach of the peace. Indeed, though the blog was accessible for a period of time neither Individual A nor any of her family, friends, or peers responded in a violent way. Accordingly, the government has no authority to punish Mr. Storme for allegedly publishing critical descriptions and opinions about of Individual A. There are countless examples of more despicable, yet protected, First Amendment exercises than Mr. Storme's blog.

The First Amendment's "bedrock principle . . . is that the government may not prohibit the expression of an idea simply because society finds that idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1998). The National Socialist Party of America was permitted to march through Skokie, Illinois -home to over 40,000 Jewish people- while wearing uniforms reminiscent of those worn by Nazis, displaying swastika armbands, and carrying a red, black, and white swastika banner. *Collin v. Smith*, 578 F.2d 1197, 1199-1200 (7th Cir. 1978). The Supreme

9

Court upheld the Westboro Baptist Church's right to infamously 'protest' fallen American soldiers' funerals while displaying place cards that read: "God Hates the USA/Thank God for 9/11," "Thank God for Dead Soldiers," "You're Going to Hell," and "God Hates You". *Snyder v. Phelps*, 562 U.S. 443, 454 (2011). Noting, "'emotional distress' – fails to capture fully the anguish Westboro's [display] added to [the soldier's father's] already incalculable grief," the Court still upheld Westboro's expression because "any distress occasioned by Westboro's picketing turned on the content and viewpoint of the message conveyed." *Id.* at 456, 457. Even the President of the United States is guilty of taking to twitter to shame and launch hateful accusations at virtually anyone he disagrees with. The Brookings Institute found the President's diatribes correlate with sudden increase in toxic and threatening speech online. *How Trump impacts harmful Twitter speech: A case study in three tweets*, Megan Brown and Zeve Sanderson, The Brookings Institute, Oct. 22, 2020, available at https://www.brookings.edu/techstream/how-trump-impacts-harmful-twitter-speech-a-case-study-in-three-tweets/. Still, the government has not indicted the President nor any individuals who followed his lead and tweeted hateful messages directly at his perceived enemies.

All this viciousness notwithstanding, the marching Nazis, funeral protestors, and the President's hate inciting tweets, are all legal forms of expression that are guaranteed and protected under First Amendment. Mr. Storme is not the president and he cannot be even remotely compared to a Nazi or a funeral protestor, yet he shares the same First Amendment rights as they do. The government has no more of a right to criminalize his speech here as it did under those circumstances. As the Seventh Circuit asserted over thirty years ago, "[i]t is, after all, in part the fact that our constitutional system protects minorities unpopular at a particular time or place from governmental harassment and intimidation, that distinguishes life in this country from life under

10

the Third Reich." *Collin*, 578 F.2d at 1201. In this vein, this court should find the government's interest in protecting Individual A from Mr. Storme's upsetting speech is not compelling, that the Indictment does not satisfy strict scrutiny, and must therefore be dismissed.

## CONCLUSION

The statute, as applied to Mr. Storme's speech, is a content-based restriction. The underlying basis behind such a restriction does not serve a compelling state interest. Therefore, the statute as applied violates Mr. Storme's First Amendment rights and this court must dismiss the Indictment.[2]

**WHEREFORE,** Mr. Storme respectfully moves this Court to find 18 U.S.C. § 2261(A)(2), as applied violates Mr. Storme's First Amendment Rights and to enter an order dismissing the Indictment.

Respectfully submitted,

/s/Gal Pissetzky
Gal Pissetzky and Adam Bolotin
Attorneys for Mr. Storme
35 E. Wacker Drive
Suite 1980
Chicago, IL 60601
(312)-566-9900

---

[2] Once this Court determines that Count One must be dismissed, it follows that Count 2 shall be dismissed as well since a violation of Count 2 as charged requires Count 1 stand.

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, and the General Order on Electronic Case Filing (ECF) the

## **MOTION TO DISMISS INDICTMENT**

was served January 5, 2021, pursuant to the district court's ECF filers to the following:

    Assistant United States Attorney
    Northern District of Illinois

                        /s/Gal Pissetzky
                        Gal Pissetzky
                        35 E. Wacker Drive
                        Suite 1980
                        Chicago, IL 60601
                        (312)-566-9900