**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. 20 CR 650** |
| **v.** | **)** | |
| | **)** | **Judge John Z. Lee** |
| **VINCENT STORME,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## MEMORANDUM OPINION AND ORDER

After breaking up with his girlfriend in May 2020, Defendant Vincent Storme began an online campaign to intimidate and harass her. Using a website and a host of social media accounts that he created in her name, Storme set out to disseminate to his former partner's family, friends, and co-workers numerous diatribes against her, as well as certain personal information, much of which Storme obtained by accessing her cell phone without consent. Based on that conduct, the government charges Storme with cyberstalking in violation of 18 U.S.C. § 2261A(2) and unauthorized access of a protected computer in furtherance thereof in violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii). Contending that § 2261A(2) constitutes an impermissible content-based restriction on speech, Storme moves to dismiss the indictment. For the reasons set forth below, the Court denies the motion.

## I.    Background[1]

Around June 10, 2020, a woman filed a complaint with the Federal Bureau of Investigation's ("FBI") Internet Crime Complaint Center, alleging that she was the victim of an online cyberstalking campaign. Criminal Compl., Attach., M. Devine Aff. ¶ 5 ECF No. 1. She identified the culprit as Storme, whom she had been dating between January to May of that year. *Id.* ¶ 6.

According to the indictment, after the complainant ended the relationship, Storme embarked on a campaign of threats and harassment, employing a website and numerous social media accounts that he had created in her name. *Id.* ¶¶ 6–7. Using these platforms, Storme proceeded to distributed private information about the complainant, much of which he obtained from her cell phone without consent, to her family, friends, and co-workers, along with derogatory accusations against her. *Id.* ¶¶ 7–8.

Storme created the website, bearing the domain www.[the woman's first and last names].com, around June 4, 2020, using a domain registrar called Namecheap. *Id.* ¶¶ 7, 9. The website features an over 9,000-word document broadcasting Storme's grievances toward the complainant, which begins:

> This is [the woman]. She is a liar, a cheater, a manipulator, abuser, and exhibits many covert narcissistic traits. This site serves as a cautionary warning to inform people that enter [her] life to her past and what she is capable of.

---

[1]    The Court takes the following allegations as true and views them in the light most favorable to the government for purposes of deciding the motion to dismiss. *See United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009).

*Id.* ¶¶ 11–12.  The document goes on to include explicit details of the woman's alleged sexual preferences; screen shots of intimate and sexually explicit text messages between her and Storme; screen shots of her private social media and dating profiles, including personally identifying information; and sexually explicit images of her.[2]  *Id.* ¶ 14.  The document also describes how Storme obtained some of this private information from the woman's phone while she was sleeping one day during their relationship.  *Id.* ¶ 16.  It concludes, "To [the woman] – your shitty actions and how you poorly treat people has consequences.  **This will follow you forever, I promise you**."  *Id.* ¶ 13 (emphasis in original).

To publish the website and its contents to the woman's family, friends, and co-workers, Storme created six social media accounts in her name—two Instagram accounts, a Facebook account, Google email (or "Gmail") account, a LinkedIn account, and  a Reddit account.  Storme made these accounts appear as though they belonged to the woman.  *Id.* ¶¶ 7–8, 29–30.  The Instagram accounts, named "who is [the woman's first and middle names]" and "[the woman's first and middle names]," featured a variety of similar private content about the woman, including screenshots of intimate and sexually charged conversations from their relationship and details of a Reddit account showing a nude image of her.  *Id.* ¶¶ 18–19, 23–24.  The second account also accused her of infidelity and made further derogatory and defamatory accusations against her.  *Id.* ¶ 24.

---

[2]        Although Storme argues that these and other allegations are "false and misleading," these are questions for another day.  Def.'s Mot. Dismiss at 7, ECF No. 48; *see Moore*, 563 U.S. at 586.

The Facebook account bore a moniker that the woman used in her legitimate social media profiles and contained her true name and images within the body of the page. *Id.* ¶¶ 7 n.2, 25–26. The LinkedIn account similarly used her true name and employment status. *Id.* ¶ 29. The Gmail account, named "[the woman's first and last names]," was used to email a link to the website to the woman's father, in an email with the subject line, "This is your daughter." *Id.* ¶¶ 27–28. As for the Reddit account, Storme used it to disseminate the link in a subReddit called "/r/RegularRevenge." *Id.* ¶ 30.[3]

Due to Storme's campaign of threats and harassment, the woman started to miss work, lost weight rapidly, and suffered "unbearable" emotional distress. She ultimately had to leave her home in Chicago to stay with her family. *Id.* ¶ 6.

Based on these allegations, a grand jury indicted Storme on two counts in November 2020. *See* Indictment, ECF No. 39. Count I charges Storme with cyberstalking—that is, knowingly using interactive computer systems of interstate commerce, including Namecheap, Instagram, Facebook, Google, LinkedIn, and Reddit, with the intent to harass and intimidate another person, in order to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person or an immediate family member of that person—in violation of 18 U.S.C. § 2261A(2)(B). *Id.* at 1. Count II charges Storme with intentionally accessing a computer used in interstate

---

[3]     Storme's harassing conduct was not limited to the virtual world. In July 2020, he visited the woman's house and slashed her tires twice within the span of five days. Criminal Compl. ¶¶ 31–32.

commerce without authorization and, thereby, obtaining information from a protected computer in furtherance of the cyberstalking alleged in Count I, in violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii). *Id.* at 2.

Now before the Court is Storme's motion to dismiss the indictment based on the First Amendment. *See* Def.'s Mot. Dismiss ("Mot."), ECF No. 48.

## II.     Legal Standard

Under Federal Rule of Criminal Procedure 7(c)(1), "[t]he indictment or information must be a plain, concise, and definite statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment satisfies that requirement if it: "(1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010).

"Indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (cleaned up). Although "there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *White*, 610 F.3d at 959. For the purpose of a motion to dismiss, courts take the allegations in the indictment as true and view them in the light most favorable to the government. *Moore*, 563 F.3d at 586.

### III.  Analysis

In moving to dismiss the indictment, Storme argues that 18 U.S.C. § 2261A(2) is a content-based restriction that is not narrowly tailored to serve a compelling governmental interest and, thus, fails the two-step "time, place, or manner" test articulated in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015).[4]  Under that test, content-based laws—*i.e.*, "those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 163.

Step one of the *Reed* test asks whether the statute is content based or content neutral.  *Id.*  To make this determination, courts must "consider whether the regulation of speech on its face draws a distinction between the message a speaker conveys." *Id.* (cleaned up).  Even where the statute appears "facially content neutral," it "will be considered content-based regulation of speech" if it "cannot be justified without reference to the content of the regulated speech" or was enacted "because of disagreement with the message the speech conveys." *Id.* at 164 (cleaned up).

At step two, the statute must pass the appropriate level of constitutional scrutiny.  A content-based restriction "can stand only if [it] survive[s] strict scrutiny, which requires the [g]overnment to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 171 (cleaned up).  A content-neutral restriction, by contrast, need only pass intermediate scrutiny. *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 827 (7th Cir. 1999).

---

[4]     The government does not dispute that, if § 2261A(2)(B) is found unconstitutional, Count II must also be dismissed because it is premised on an underlying violation thereof.

As a threshold matter, however, the Court must determine whether the statute in question "target[s] speech at all[.]" *See United States v. Ackell*, 907 F.3d 67, 77 (1st Cir. 2018). Here, the statute makes it unlawful to "use[] the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct" that "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress" to another person, and "with the intent to kill, injure, harass, [or] intimidate" that other person. 18 U.S.C. § 2261A(2)(B). The term 'course of conduct' as used in the statute "means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." *Id.* § 2266(2).

In rejecting a similar challenge to § 2261A(2)(B), the First Circuit concluded that, on its face, the statute "regulates not speech, but conduct—or, to be precise, 'course[s] of conduct.'" *Ackell*, 907 F.3d at 73 (quoting 18 U.S.C. § 2261A(2)(B)); *see also id.* at 77–78 (reiterating as much). Other circuits have rejected First Amendment challenges to § 2261A on similar grounds. *See United States v. Gonzalez*, 905 F.3d 165, 191 n.10 (3d Cir. 2018) (concluding that § 2261A "is not targeted at 'speech or [] conduct necessarily associated with speech,' but [at] harassing and intimidating conduct that is unprotected by the First Amendment" (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003))); *accord United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014); *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012); *United States v. Bowker*, 372 F.3d 365, 378–79 (6th Cir. 2004), *cert. granted, judgment vacated on*

*other grounds*, 543 U.S. 1182 (2005), *judgment reinstated in relevant part*, 125 F. App'x 701, 701 (6th Cir. 2005); *cf. United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) (recognizing that § 2261A "does not criminalize constitutionally protected free expression" in rejecting a vagueness challenge); *United States v. Shrader*, 675 F.3d 300, 312 (4th Cir. 2012) (same).

The Court finds the reasoning of these authorities to be sound and concludes that § 2261A(2)(B) neither targets speech in general nor impermissibly impinges upon protected speech in particular. As to the first point, the crux of any § 2261A violation is "a course of conduct," consisting of two or more "acts," that causes, attempts to cause, or would reasonably be expected to cause substantial emotional distress to another person. *See* 18 U.S.C. §§ 2261A(2)(B), 2266(2). Granted, one prohibited means of engaging in such conduct is the use of "communication service[s]," which often involves speech of some type. *See id.* § 2261A(2)(B). But the statute also prohibits non-expressive conduct, such as the use of "any other facility of interstate or foreign commerce," to carrying out the course of conduct. *See id.; see also Ackell*, 907 F.3d at 73 (noting that such conduct could include "tak[ing] out unwanted loans in the victim's name"). And, indeed, even use of communication services need not involve speech; for instance, "a defendant could send envelopes of unknown white powder to the victim in the mail," or "could repeatedly infect the victim's computers with viruses," or even "arrange every day for deliveries to be made at the victim's home at all hours of the night." *See Ackell*, 907 F.3d at 73.

In short, although § 2261A(2)(B) prohibits some conduct that might include speech, it does not "target[] speech." *Id.* (emphasis added). To the contrary, because the statute prohibits the use of *any* facility of interstate or foreign commerce as a means of engaging in the prohibited conduct, it applies equally to speech and nonspeech activity. In this case, the indictment alleges that Storme violated § 2261A by taking various steps to publicize information with the intent to harass and intimidate his former partner. Used in this way, § 2261A(2)(B) "cannot be . . . an impermissible content- or viewpoint-based restriction on speech." *Id.* at 78.

Furthermore, to the extent that an alleged violation of § 2261A targets the speech or expressive activity in and of itself, such speech or expressive activity would not be constitutionally protected in the first place. *E.g.*, *Conlan*, 786 F.3d at 386. This is because the statute only applies to speech that is intended to "harass" or "intimidate." *See* 18 U.S.C. § 2261A(2)(B). And the Supreme Court has long recognized that "a small number of 'well-defined and narrowly limited classes of speech'" fall outside "the First Amendment's protection of expression," *Ackell*, 907 F.3d at 75 (quoting *United States v. Stevens*, 559 U.S. 460, 468–69 (2010) (in turn quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942))), including at least two categories that are relevant here: (1) "true threats," *id.* (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)); and (2) "speech integral to criminal conduct," *id.* (quoting *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (in turn citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)))).[5]

---

[5]    The criminal complaint also alleges that Storme engaged in defamation, another class of unprotected speech. *See Stevens*, 559 U.S. at 468.

9

As to the first, "'[t]rue threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. This category also includes "[i]ntimidation in the constitutionally proscribable sense of the word," which "is a type of true threat." *Id.* at 360.

As to the second category of unprotected speech, speech integral to criminal conduct "is precisely what it sounds like, and it is not protected on First Amendment grounds 'merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *Ackell*, 907 F.3d at 75 (quoting *Giboney*, 336 U.S. at 502). One example is speech that amounts to "criminal harassment," a common offense. *See id.* at 75–76; *cf., e.g.*, 720 Ill. Comp. Stat. 5/26.5-3 (making it a crime to engage in "harassment through electronic communications"). Another is speech integral to criminal intimidation. *See, e.g.*, *Ackell*, 907 F.3d at 76; *cf. Gonzalez*, 905 F.3d at 193 (The defendants' speech served no legitimate purpose other than to harass and intimidate [the victim] . . . .").

Thus, Storme's contention that § 2261A(2)(B) targets speech based on its communicative content is incorrect. Rather, the statute prohibits certain courses of conduct—whether carried out by a communicative or noncommunicative facility of interstate or foreign commerce—rather than merely the speech itself. Furthermore, to the extent § 2261A(2)(B) is targeted exclusively at the speech itself, such speech finds no protection in the First Amendment and, thus, does not trigger the Supreme Court's "time, place, or manner" test in *Reed*.

10

Although Storme cites *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), to support his view of the statute, that case is unhelpful. In *Cassidy*, the district court held that § 2261A(2)(A) regulated speech as applied to the defendant in violation of the First Amendment. But, in so doing, the *Cassidy* court was convinced that the conduct for which the defendant was charged was protected because it included criticism of the victim's leadership and religious beliefs, thereby bringing it under the shelter of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *See* 814 F. Supp. 2d. at 578–80, 586–87. That is not the case here.

Storme also relies on *People v. Relerford*, 104 N.E.3d 341 (Ill. 2017). There, the Illinois Supreme Court found that parts of Illinois's stalking and cyberstalking statutes, *see* 720 Ill. Comp. Stat 5/12-7.3 and 5/12-7.5, were impermissible content-based restrictions on free speech. *Id.* at 348–53. The court's holding, however, relied on the absence of a specific-intent requirement, which allowed the statutes to criminalize merely negligent conduct. *Id.* at 350–52. And the court specifically distinguished the constitutionally infirm Illinois statutes from § 2261A, which requires proof of specific "intent to commit an unlawful act." *Id.* at 352.

Finally, Storme's efforts to recast his own speech as protected speech are unpersuasive. Storme recites the truism "that the government may not prohibit the expression of an idea simply because society finds that idea itself offensive of disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1998); *see also Cohen v. California*, 403 U.S. 15, 25 (1971) (counting "offensive utterance[s]" among the "necessary side effects of the broader enduring values" promoted by the First

Amendment. But § 2261A(2)(B) does not reach merely offensive speech. When a charge under § 2261A(2)(B) is directed at the speech itself, the provision prohibits speech that has traditionally been excluded from constitutional protection. And, here, Storme has failed to establish that the speech that forms the basis of Count I is something short of criminal harassment or intimidation, both of which are "illegal under § 2261A." *See Gonzalez*, 905 F.3d at 193.

Accordingly, the Court concludes that the violation of § 2261A(2)(B) charged in Count I of the indictment does not violate the First Amendment. For the same reason, Storme's challenge to the violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii) charged in Count II of the indictment fails as well.

## IV.    Conclusion

For the reasons set forth above, Storme's motion to dismiss the indictment is denied.

**IT IS SO ORDERED.**                    **ENTERED: 8/19/21**

_____

**John Z. Lee**
**United States District Judge**