```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION


UNITED STATES OF AMERICA,           )    No. 20 CR 650
                                    )
              vs.                   )    Chicago, Illinois
                                    )
VINCENT STORME,                     )
                                    )    September 30, 2020
              Defendant.            )    9:52 a.m.


                     TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HON. SUNIL R. HARJANI, MAGISTRATE JUDGE

APPEARANCES:

For the Government:     MS. SHOBA PILLAY
                        United States Attorney's Office,
                        219 South Dearborn Street, Room 500,
                        Chicago, Illinois  60604

For the Defendant:      MR. RICHARD M. BEUKE
                        Richard M. Beuke & Associates,
                        801 North Cass Avenue, Suite 200,
                        Westmont, Illinois  60559

                        MR. JAMES M. RYAN
                        Jim Ryan & Associates,
                        1555 Bond Street, Suite 103,
                        Naperville, Illinois  60563
```

PATRICK J. MULLEN
Official Court Reporter
United States District Court
219 South Dearborn Street, Room 1412
Chicago, Illinois  60604
(312) 435-5565

1                 (Telephonic proceedings on the record.)
2                 THE CLERK:  20 CR 650, U.S.A. v. Vincent Storme.
3                 THE COURT:  Okay.  Good morning.  Enter your
4    appearances, please, starting with the Government.
5                 MS. PILLAY:  Shoba Pillay for the United States.
6                 MR. BEUKE:  Judge, Rick Beuke for Mr. Storme.
7                 MR. RYAN:  Tim Ryan also for Mr. Storme.
8                 MS. ASHBURN:  Shu Ashburn.
9                 THE COURT:  Sorry?
10               MR. BEUKE:  We have the defendant's mother in the
11   office with us, Your Honor.
12               THE COURT:  I see.  And, Mr. Storme, are you on the
13   line?
14               THE DEFENDANT:  Yes, sir, I'm here.
15               THE COURT:  Okay.  We are here for a continued
16   detention hearing.  I'll hear an update as to what has
17   transpired.  Government, you may proceed.
18               MS. PILLAY:  Thank you, Your Honor.  The parties have
19   further negotiated on this.  Defense counsel has worked
20   diligently with the defendant's family in order to file the
21   paperwork for Ms. Bissell.  So I believe everything now has
22   been completed, and Ms. Bissell truly apologizes for the error
23   in the spelling of the Court's, Your Honor's name.  I think
24   Ms. Santiago had indicated that that's been resolved, so I
25   think the paperwork is now completed.

1  The Government submitted to the Court this morning the
2 proposed bond conditions by email after it had been reviewed
3 and approved by defense counsel and with pretrial services so
4 that should be complete.  The only remaining document is the
5 list of names for the no contact condition.  I have prepared an
6 under seal filing with the list of names that includes specific
7 individuals, including the victim and some of her family,
8 friends, and her employer, which at the Court's direction I'll
9 have filed.  I will file it under seal and circulate it and
10 share it with the parties and pretrial services.  So I think
11 we're in pretty good shape.
12  The only concern I have, Your Honor, is ensuring that
13 Your Honor is able to get -- to interview Ms. Ashburn, who has
14 volunteered to be the third party custodian, defendant's
15 mother, because I have some concerns based on pretrial services
16 supplemental or addendum report indicating that she did not
17 know that her son has a passport when he apparently, according
18 to him, lived in China for two years, and she indicated he had
19 no prior international travel.  That's a pretty significant
20 discrepancy in knowing her son.
21  Then beyond that, part of the defense conduct
22 involves, as Your Honor knows, Mr. Storme, the defendant, going
23 to the victim's house driving a fancy sports car, namely, a
24 Maclaren, and that asset it is not listed in his financials for
25 pretrial services, which I found a little odd considering the

1 value of that vehicle.

2 So those are two things I just wanted to get clarified
3 just to ensure that this defendant is being fully candid with
4 the Court in advance of any release. Thank you, Your Honor.

5 THE COURT: Thank you.

6 Defendant, you may proceed.

7 MR. BEUKE: Judge, with respect to the defendant's
8 mother, we've spoken to her this morning and there may have
9 been just a bit of misunderstanding in terms of the language
10 problem. She knows and is aware of the fact that after college
11 her son went, you know, to northern China for two years. I
12 believe he was teaching over there. Her answers were, you
13 know, I think, due to the language problem as opposed to
14 anything else.

15 As to the asset, Judge, I'm just coming in on the
16 case. I'm not sure that I have an answer to give to the Court
17 right now, but I certainly will make sure that I get those
18 answers as soon as we finish today.

19 THE COURT: Okay.

20 MR. RYAN: Judge, Tim Ryan also on behalf of the
21 defendant. As we mentioned at the detention hearing earlier,
22 if our client certainly failed to mention his car as an asset,
23 we can get pretrial services the information regarding that
24 vehicle to update the assets. We can do that, you know, within
25 24 hours.

1  THE COURT: Okay. I have some questions. First, as I
2 understand it, he's going to be living in a Chicago apartment
3 with his mother, is that right?
4  MR. RYAN: It is, Your Honor.
5  THE COURT: Okay. And what did you find out about his
6 passport?
7  MR. RYAN: Judge, Tim Ryan on behalf of defendant.
8 With regard to his passport, he has a passport, you know, the
9 traditional book-looking passport, and he also has what's
10 referred to as a passport card which looks more like a driver's
11 license. My office has both of those documents, and we are
12 prepared today to -- well, we were going to deliver them to
13 pretrial services today. Pretrial services recommended, as
14 reflected in the proposed bond orders that the Government
15 drafted, that we mail it and get it there by, as I think they
16 put, October 7th as the deadline date for them to receive it by
17 mail.
18  THE COURT: Okay. Okay. I appreciate the information
19 you've given me. I'm glad to see that you have custody of his
20 passport and that he will have a third party custodian in his
21 mother. I do need to talk to her first, so I'm going to ask
22 Ms. Ashburn some questions. Is that okay with defense counsel?
23  MR. BEUKE: Fine, Your Honor.
24  THE COURT: Okay. Ms. Ashburn, are you on the line?
25  MS. ASHBURN: Yeah.

1　　　　　　　THE COURT:  Okay.  I'm Judge Harjani.  How are you
2　today?
3　　　　　　　MS. ASHBURN:  I'm fine.
4　　　　　　　THE COURT:  Okay.  Can you please state your name?
5　　　　　　　MS. ASHBURN:  Shu W. Ashburn.
6　　　　　　　THE COURT:  Okay.  Ms. Ashburn, where do you currently
7　live?
8　　　　　　　MS. ASHBURN:  I live at 307 Thomas Heights,
9　Martinsville, Virginia.
10　　　　　　　THE COURT:  Okay.  Where are you now physically?
11　　　　　　　MS. ASHBURN:  At the lawyer office.
12　　　　　　　THE COURT:  In Chicago?
13　　　　　　　MS. ASHBURN:  Yeah, in Chicago, yes.
14　　　　　　　THE COURT:  Okay.  Are you the mother of the
15　defendant, Vincent Storme?
16　　　　　　　MS. ASHBURN:  Yes, sir.
17　　　　　　　THE COURT:  Okay.  How old are you?
18　　　　　　　MS. ASHBURN:  I'm 63.
19　　　　　　　THE COURT:  Okay.  What do you do for a living?
20　　　　　　　THE WITNESS:  I'm just a housewife, and my husband
21　work.
22　　　　　　　THE COURT:  Okay.
23　　　　　　　MS. ASHBURN:  I used to but not now.
24　　　　　　　THE COURT:  Okay.  Have you had regular contact with
25　your son over the last few years?

1                MS. ASHBURN:  Yes, I do.
2                THE COURT:  Okay.  Tell me about it.  What kind of
3    contact?
4                MS. ASHBURN:  I call him up sometimes.  He sometimes
5    call me and ask what's going on, and he tell me he work so
6    hard.  And then he send, you know, gifts and sometimes come by
7    at Christmastime, comes home, and send me maybe -- for Mother's
8    Day he send me flowers.
9                THE COURT:  Okay.  It's my understanding that you're
10   willing to serve as a third party custodian for your son.  Is
11   that right?
12               MS. ASHBURN:  Yeah.
13               THE COURT:  Okay.  And you're also posting your
14   property as an asset for the bond, is that right?
15               MS. ASHBURN:  Yes, yes.
16               THE COURT:  Okay.  Do you understand what it means to
17   be a third party custodian?
18               MS. ASHBURN:  Yes, I understand that.  I know.
19               THE COURT:  Tell me.  Tell me what you understand.
20               MS. ASHBURN:  If he break the law, you know, they take
21   my property.
22               THE COURT:  All right.  So you are required to
23   supervise him and make sure he --
24               MS. ASHBURN:  Yes.
25               THE COURT:  -- complies with the conditions.

1        MS. ASHBURN:  Right, yeah.
2        THE COURT:  Okay.  And you understand that if he
3   violates bond that the Government can come and seek to forfeit
4   your property.
5        MS. ASHBURN:  Yes, I know that.
6        THE COURT:  Okay.  This is your house, is it?
7        MS. ASHBURN:  It is my house.
8        THE COURT:  Okay.  So you understand you could lose
9   your house if your son violates his conditions.
10       MS. ASHBURN:  Yes, I understand.
11       THE COURT:  Okay.  One of the conditions that I will
12  go over in a moment is that he not be allowed to use the
13  Internet except for work purposes.  Do you understand that?
14       MS. ASHBURN:  Yes, I understand that.
15       THE COURT:  Okay.  So that's a condition.  So, for
16  example, if someone sees him on Facebook or Instagram and
17  reports him, that's a violation of the bond conditions and you
18  could lose your house.
19       MS. ASHBURN:  Yes.
20       THE COURT:  Do you understand that?
21       MS. ASHBURN:  Yes, I understand that.
22       THE COURT:  Okay.  And do you understand it's going to
23  be your responsibility to ensure that he does not use the
24  Internet except for employment purposes?
25       MS. ASHBURN:  Okay.

1         THE COURT: Okay. Do you also understand that it's
2 your responsibility to ensure that he does not contact or
3 communicate with the victim in this case? Do you understand
4 that?
5         MS. ASHBURN: Yeah.
6         THE COURT: Okay. Are you willing to do all of these
7 things?
8         MS. ASHBURN: Yes, I do.
9         THE COURT: Okay. Mr. Storme, are you on the line?
10         THE DEFENDANT: Yes, sir, I'm here.
11         THE COURT: Do you understand today what your mother
12 is doing for you?
13         THE DEFENDANT: Yes, sir, I do.
14         THE COURT: Okay. Do you understand the seriousness
15 of what she's doing, which is that she could lose her house --
16         THE DEFENDANT: Absolutely.
17         THE COURT: -- if you do not follow these conditions?
18         THE DEFENDANT: Absolutely, sir.
19         THE COURT: Okay. And you understand that she's
20 moving here to Chicago so that you can essentially get out of
21 jail. You get that, right?
22         THE DEFENDANT: I completely understand that, sir.
23 She's doing a lot for me right now.
24         THE COURT: Okay. And you understand that one mess-up
25 going on the Internet that's not for work purposes can result

1 in your mother losing her house. Do you get that?
2     THE DEFENDANT: I do understand that. Does that
3 prohibit me from contacting my attorney through email?
4     THE COURT: Well, let's talk about that for a moment.
5 There's no use of Internet for employment purposes.
6     THE DEFENDANT: Okay.
7     THE COURT: That's the language that's being used --
8     THE DEFENDANT: Yes, sir.
9     THE COURT: -- no use of the Internet.
10     THE DEFENDANT: Does that include -- I have a company
11 as well. Does that include that?
12     THE COURT: Sir, I'm not the person you should be
13 asking.
14     THE DEFENDANT: Okay.
15     THE COURT: Why don't you have your lawyers weigh in
16 here because you're posing this to me.
17     THE DEFENDANT: Okay. Sorry.
18     MR. RYAN: Judge, Tim Ryan on behalf of Mr. Storme.
19 In addition to his job at PayPal, he also has an LLC that he's
20 trying to get off the ground, and it involves writing software
21 code in relation to selling automobiles, easier ways to --
22 software that would involve making it easier to sell
23 automobiles is the primary function.
24     So employment, the definition of employment, we're
25 asking if that definition could include his work with PayPal as

1　an employed software engineer as well as with regard to this
2　LLC that he's working on as a self -- as kind of a
3　self-employment.
4　　　　　THE COURT: Okay. So as I understand employment, it
5　basically means for work. It doesn't matter if he's a W-2
6　employee or something else, but it has to be work-related.
7　　　　　MR. RYAN: Okay.
8　　　　　THE COURT: Government, do you agree?
9　　　　　MS. PILLAY: Yes, Your Honor.
10　　　　THE COURT: Okay. What about, Government, the issue
11　of him using the Internet, i.e., email to communicate with his
12　lawyers?
13　　　　MS. PILLAY: I don't have any objection to that. I
14　don't want to bar him from being able to have an efficient
15　means of communicating with his counsel strictly to be able to
16　review the materials. So I will -- I can add to the conditions
17　the language "except for employment purposes and attorney
18　communications" if that is amenable with Your Honor.
19　　　　THE COURT: Yes, it is.
20　　　　THE DEFENDANT: Thank you.
21　　　　THE COURT: Okay. So, Mr. Storme, let's get back to
22　the issue. Do you understand that you are not to use the
23　Internet except for your work purposes and for communicating
24　with your lawyers?
25　　　　THE DEFENDANT: Yes, sir, I do.

1  THE COURT: Okay. And you understand that going on
2  social media or even browsing websites, if you will,
3  constitutes Internet use and that you are to refrain from using
4  that?
5  THE DEFENDANT: Yes, sir. The only question I have
6  regarding that is this. As a software engineer, I do surf the
7  Internet a lot to discover, you know, things like bug issues
8  and stuff like that. So it's -- I click around on the Internet
9  a lot, so it's a little hard. I'll try my best, sir, to use
10 good judgment.
11 THE COURT: Well, that's not very reassuring, really.
12 Counsel, you may want to jump in here and assist your
13 client.
14 MR. BEUKE: Vincent, what they're saying is you cannot
15 use the Internet for anything other than employment purposes.
16 THE DEFENDANT: Okay.
17 MR. BEUKE: So when you're through PayPal, when you're
18 working for PayPal, for example, if it's an assignment
19 specifically from PayPal, that's employment purposes.
20 THE DEFENDANT: Okay.
21 MR. BEUKE: So there's not confusion there.
22 THE DEFENDANT: Well, so the confusion is sometimes I
23 work on open source software as well that I integrate into my
24 project for my company.
25 MR. BEUKE: Well, any --

1  MR. ASHBURN: Well, that would be work purposes, so I
2  think all that is related. I mean, using email for work
3  purposes and going to various sites for work purposes, surely
4  all that would be permitted.
5  MR. BEUKE: Sir, let the Judge continue now.
6  THE COURT: Okay. Mr. Storme, do you understand that,
7  what they just said?
8  THE DEFENDANT: Yes, sir.
9  THE COURT: Okay. Are you willing to abide by that
10  condition.
11  THE DEFENDANT: Yes, sir, I will.
12  THE COURT: And do you understand that you could be
13  back in prison again if you were to violate any of the
14  conditions that are listed that you've agreed to?
15  THE DEFENDANT: Yes, sir.
16  THE COURT: Okay. I'm going to go ahead now and
17  advise you of the conditions, and I want you to listen
18  carefully. Give me a second here.
19  (Brief pause.)
20  THE COURT: Okay. I have before me the proposed order
21  as to the conditions of release, and I have the appearance bond
22  form. First, to the appearance bond form, you've agreed to
23  follow every order of the court, and the bond will be forfeited
24  if you fail to appear for court proceedings, if you are
25  convicted and fail to surrender to serve a sentence that a

1  court may impose, or to comply with all the other conditions
2  that I'm about to read to you.  There's a bond in this case of
3  $100,000 that's secured, and it's secured by property, namely,
4  307 Thomas Heights in Martinsville, Virginia, and the
5  Government may seek to forfeit this property if you fail to
6  comply with your conditions of bond.
7  The conditions are as follows.  You must not violate
8  any federal, state, or local law while on release.  You must
9  cooperate in the collection of a DNA sample if authorized by
10 law.  You must advise the Court or pretrial services in writing
11 before making any change of residence or telephone number.  You
12 must appear in court as required and, if convicted, surrender
13 to serve any sentence a court may impose.  You are placed in
14 the custody of Shu Wang Ashburn in Chicago, Illinois.
15 You must submit to supervision by pretrial services.
16 You are you to surrender any passport to the pretrial services
17 office by the close of business on October 7th, 2020.  I'll
18 note for the record that your lawyers are in possession of your
19 passport and your passport card and will deliver that to
20 pretrial services before October 7th, 2020 -- or by October
21 7th, 2020.  You shall not obtain a passport or any other
22 Internet travel document.  Your travel is restricted to the
23 Northern District of Illinois unless approved in advance by
24 pretrial services.
25 You must avoid all contact, directly or indirectly,

1 with any person who is or may be a victim or witness in this
2 investigation, including the list of names to be provided to
3 pretrial and defense counsel by the Government, and you are to
4 avoid all contact with these people and victims or witnesses
5 via the Internet as well.
6 You must get medical or psychiatric treatment as
7 directed by pretrial services. You must not possess a firearm,
8 destructive device, or any other weapon. You must not use or
9 possess any narcotic drug or other controlled substance as
10 defined by law, must not use or unlawfully possess a narcotic
11 drug or other controlled substance.
12 You are to participate in a curfew, which means you
13 are restricted to your residence as directed by pretrial
14 services. You must submit to location monitoring as directed
15 by pretrial services, and you must comply with all the
16 conditions of the program.
17 You are to report as soon as possible to pretrial
18 services every contact with law enforcement, including arrests,
19 questioning, or traffic stops. Your curfew is to be directed
20 by pretrial services, the technology to be determined by
21 pretrial services on electronic monitoring. You are not to use
22 the Internet except for employment purposes and to contact your
23 lawyers, and use of -- no use of the Internet includes social
24 media platforms.
25 There's also a rider attached to the bond forms that I

1  see here which involves the property.  The signature above the
2  line "Vincent Storme," counsel, can you tell me who signed
3  that?
4            MR. RYAN:  Vincent.  The rider was signed by the
5  defendant.
6            THE COURT:  Okay.  With respect to the signatures of
7  John Ashburn and Ms. Ashburn?
8            MR. RYAN:  Yes, they both signed the document, and
9  they were in Virginia at the time.  Then they FedEx'd it back
10 to our office, and I was able yesterday to drive that document
11 after they signed it and got it to me to the Kankakee jail and
12 they had -- the jail was able to have Vincent sign it and
13 return it to me.
14           THE COURT:  Okay.  Is that correct, Mr. Storme?
15           THE DEFENDANT:  Yes, sir, it is.
16           THE COURT:  Okay.  Ms. Ashburn, is that correct?
17           MS. ASHBURN:  Yes.
18           THE COURT:  Okay.  With respect to the defendant's
19 signature on the bond forms, what's your plan, counsel?  Are
20 you planning on signing it on behalf of the defendant?
21           MR. RYAN:  Judge, if you would allow us to do that
22 because obviously he's going to be released in Kankakee and not
23 brought back to the MCC, Kankakee's policy there at the jail is
24 not to allow in-person attorney visits.  They were kind enough
25 to grant me an exception yesterday and walk that document back

1 to Vincent for signature, but it's not their preferred way of
2 doing things.
3     THE COURT: Okay. Mr. Storme, do you give consent to
4 your lawyers to sign these bond forms on your behalf?
5     THE DEFENDANT: Yes, sir, I do.
6     THE COURT: Okay. I'll allow you, counsel, to sign
7 those forms.
8     MR. RYAN: Thank you.
9     THE COURT: Mr. Storme, if you violate any of these
10 conditions that I have just read, it could result in revocation
11 of your bond, an order of detention, and it could result in
12 further imprisonment and further prosecution by the Government.
13 Do you understand that?
14     THE DEFENDANT: Yes, sir, I do.
15     THE COURT: Do you agree to comply with all the
16 conditions that I have just stated?
17     THE DEFENDANT: Absolutely, sir.
18     THE COURT: Ms. Ashburn, do you agree to supervise
19 your son and see that he complies with the conditions that I
20 have just read?
21     MS. ASHBURN: Yes, sir.
22     THE COURT: Okay. Once I get the signed forms after
23 the slight correction from the Government, we will go ahead and
24 process -- begin processing the order to attempt to get
25 Mr. Storme released today. Okay?

1         MR. BEUKE: Thank you, Judge.

2         MR. ASHBURN: Thank you.

3         MS. ASHBURN: Thank you so much, Judge.

4         THE COURT: Okay. What else do we have to talk about?

5 Do we have to talk about a preliminary hearing?

6         MR. BEUKE: Judge, we've had some discussions with the

7 Government a little earlier today, and I think we're making

8 progress towards reaching an agreement regarding an information

9 or an indictment.

10         THE COURT: Okay. So at this time do you wish to

11 waive the right to a preliminary hearing?

12         MR. BEUKE: We will at this time, Judge.

13         THE COURT: Okay. All right. Based upon the waiver

14 of counsel on behalf of his client, a preliminary hearing is

15 waived, and a finding of probable cause will be entered based

16 upon the allegations of the complaint. Do we need to unseal?

17         THE CLERK: No, it's already been unsealed, Judge.

18         THE COURT: Got it. Okay.

19         Okay. Anything else from the Government?

20         MS. PILLAY: Your Honor, I just submitted the revised

21 forms for the Court as well as the proposed addendum with the

22 no contact list which I will also file under seal once the

23 order of conditions is entered.

24         The one thing, Your Honor, I would ask, I noticed that

25 you've done a thorough interview of the third party custodian.

1  I just want to make sure because of the comments by defendant
2  concerning the Internet that Ms. Shu understands that part of
3  her custodianship includes supervising and monitoring his
4  Internet use.  So I just want to make sure she understands
5  that's part of her obligations.  Because of his particular area
6  in being a software engineer, it will be a little bit harder
7  for her to do.  So I want to make sure she understands that, if
8  Your Honor doesn't mind obtaining that as well.  Thank you.
9              THE COURT:  Okay.  Ms. Ashburn, are you on the line?
10             MS. ASHBURN:  Yes, sir.
11             THE COURT:  Did you hear what the Government just
12 said?
13             MS. ASHBURN:  Yes, I understand that.
14             THE COURT:  Okay.  Is that something you're willing to
15 do?
16             MS. ASHBURN:  Yes, I do.
17             THE COURT:  Okay.
18             MR. BEUKE:  Judge, we explained that aspect of her
19 responsibilities to the Court, also -- or to her.
20             THE COURT:  Okay.  I'm satisfied that she understands
21 her obligations.  We've covered it a few times, and she's
22 responded affirmatively.  I believe that's sufficient for
23 today.
24             Okay.  Anything else from the defense?
25             MR. BEUKE:  No, Your Honor.  Thank you for your help.

...

20

MR. RYAN:  Thank you.

MR. ASHBURN:  Can someone ask for clarification on the return of his computer?  It's going to be very hard for him to do anything.

MR. BEUKE:  Mr. Ashburn, we'll talk about that after this phone call.

MR. ASHBURN:  Okay.  Thank you.

THE COURT:  Okay.  Thank you all.  We are adjourned.

MR. BEUKE:  Thank you, Your Honor.

MR. RYAN:  Thank you, Your Honor.

MR. ASHBURN:  Thank you, Your Honor.

MS. PILLAY:  Thank you, Your Honor.

(Proceedings concluded.)

C E R T I F I C A T E

I, Patrick J. Mullen, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the Honorable SUNIL R. HARJANI, one of the judges of said Court, at Chicago, Illinois, on January 28, 2022.

*/s/ Patrick J. Mullen*
Official Court Reporter
United States District Court
Northern District of Illinois
Eastern Division