UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-650 |
| | ) | |
| VINCENT STORME | ) | Judge John Robert Blakey |
| | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO
RECONSIDER THE ISSUE OF PRETRIAL DETENTION**

On August 3, 2023, this Court revoked Defendant's bond and ordered him remanded to the custody of the U.S. Marshals. *See* [139]. The Court held a full evidentiary hearing on August 9, 2023 concerning detention and, on August 9 and 10, 2023, issued orders concerning the revocation of Defendant's bond. *See* [156], [157]. Defendant appealed, and the Seventh Circuit affirmed the revocation and detention order, *see* [180].

On July 17, 2024, Defendant moved to reopen the detention hearing and for reconsideration of the revocation order, *see* [183]. The Court ordered the government to respond, and, after full briefing, *see* [206], [207], held a hearing July 10, 2025 on the issue. For the reasons stated below, the Court now denies Defendant's request for reconsideration, [183].[1]

---

[1] Even though the current request for pretrial release was previously characterized as "joint," *see* [223], [225], this is not currently the case. When Defendant moved to re-open the issue of pretrial detention, *see* [183], the Government opposed Defendant's motion, *see* [207], arguing that, despite Defendant's improved mental status and re-entry plan, detention remains warranted "in light of defendant's upcoming trial, the inevitability of interim rulings on defendant's pretrial motions and the parties' motions in limine, and defendant's pattern of responding 'unexpectedly, dangerously, and obsessively to adversity in potentially escalatory ways.'" *Id.* at 1 (quoting *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023)). Recently, the Government indicated that while it does not oppose pre-trial release in theory, it nonetheless disagrees with Defendant as to what conditions remain necessary to secure his presence in court and to ensure the safety of the public and others. As such, the Government does, in fact, oppose any request for release that fails to include a sufficient plan for continued mental health treatment, location monitoring, and technology monitoring (to ensure that Defendant stays off the Internet)—none of which Defendant includes in his release proposal. Indeed, at the July 10 hearing, counsel for both sides conceded that there is no plan for such treatment and no plan for how to properly limit Internet access in Storme's mother's Virginia home. The request for release is thus not "joint" and, in any event, Pretrial Services continues to oppose Defendant's request for release. [224].

A.   **Applicable Authority**

18 U.S.C. § 3142(e)(1) provides that, "if, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." The statute further provides that a detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

Based upon the Court's prior findings (incorporated herein by reference), and the additional information raised in the materials and hearing on Defendant's motion for reconsideration, the record confirms the need for the Defendant's continued pretrial detention.

B.   **Findings & Conclusions**

In seeking reconsideration of the Court's prior detention order, Defendant claims that "additional information warrants rehearing and reconsideration" of Defendant's detention. [183] at 7.

Defendant first argues that his release would facilitate his ability to prepare for trial. But this factor is neither new, nor availing. While pretrial release may make an attorney's preparation easier in many cases, such is not the case here, where Defendant seeks release into the care and custody of his mother, who lives in Virginia (counsel is in Chicago), and where Defendant concedes that he must be restricted from using electronic devices capable of connecting to the Internet. Moreover, even though defense counsel stated at the hearing that Defendant's detention has purportedly hampered his ability to prepare for trial, defense counsel conceded that he has raised no such issues with the Court since bond was revoked, and he otherwise fails to explain how custody alone will prevent preparation and a fair trial, given the ample amount of time available for him to prepare for a trial date set months away. In short, nothing in the record supports counsel's assertion that he cannot prepare for trial with an in-custody client (a task attorneys do on a routine basis).

Second, Defendant claims, without support, that he was in danger of overserving his time in custody, given the most recent continuance of his trial date (at his request, *see* [219]). Not so. In fact, at the July 10 hearing, all parties agreed that no such danger exists, and the Government confirmed that Defendant's

estimated advisory guideline range remains 41–51 months; if detained through trial, he will have been in custody for approximately 30 months.

Lastly, Defendant argues that "new evidence"—specifically declarations from his mother and stepfather—now contradict the views of Defendant's therapist, Pretrial Services, this Court, and the Seventh Circuit, that the Defendant's behavior and mental conditions warrant detention. *Id.* The referenced declarations, dated May 7, 2024, claim that Defendant transferred his condo to his mother and stepfather a few months before being taken into custody in August 2023 as part of an effort to allow them to take a tax deduction for paying the mortgage, [183-1], [183-2], rather than as preparation to harm himself or others in that time period. This material, however, fails to warrant reconsideration of detention.

First, the record undermines Defendant's recent characterization of his prior behavior. For example, the Defendant did not mention "tax advantages" to his therapist at the time, and instead, he told his therapist, while discussing suicidal thoughts, that he "paid the lawyer about my assets and told my mom and stepdad." [183-3] at 4. Defendant also "reported ongoing suicide ideations regarding the outcomes of his criminal charges" and discussed contacting a lawyer to transfer assets to his mom "depending on the outcome" of a court hearing, while stating that he would not go to jail, *id.* at 8, 10, and otherwise expressing suicidal thoughts linked to his court case, *id.* at 13, 14. Quite simply, Defendant's therapists and Pretrial Services officer (professionals trained in active listening) heard something very different from Defendant's mother and stepfather, who now dispute his mental health struggles. The pretrial release status memo dated August 4, 2023 documents that Defendant "expressed suicidal ideation since the beginning of his supervision"; took active steps toward killing himself in both October 2020 and February 2021; and made troubling statements "at nearly every weekly counseling session (as expressed in a status report dated November 9, 2022) that he will not go to jail and will not be a convicted felon based on this case and would kill himself." [183-5] at 1. In fact, in response to Defendant's statements about transferring his assets, Defendant's Pretrial Services officer asked him "a direct question about killing himself and the defendant stated that he will not be convicted of the instant offense and said, 'I have been saying what I will do all along.'" *Id.* at 2. The recent declarations by Defendant's mother and stepfather fail to contradict the other evidence in the record, and they simply ignore or minimize Defendant's ongoing volatility and mental health struggles. Even at the July 10, 2025 hearing, his mother continued to express confusion or a lack of understanding of her son's alleged wrongdoing, expressing instead an unwavering trust in him and an apparent desire to chalk up his alleged crimes to youthful indiscretion. In sum, the record contradicts the proffered declarations, and instead confirms Defendant's admitted, documented, contemporaneous struggles with his mental health, his ongoing inability to control himself, and his mother's apparent lack of knowledge or understanding of her son's troubling behavior on pretrial release.

Indeed, the record confirms, not just suicidal ideation but also "a broader pattern" of behavior presenting a danger to others. [180] at 8. As the Seventh Circuit recognized, this Court's primary concern regarding Defendant's mental health—his desperate calls to pretrial, his statements to his therapist, his pleas to the Marshals to kill him—was that it "manifested a broader pattern of erratic, obsessive, and unpredictable behavior presenting a danger to others." [180] at 8. The record shows that Defendant "responds unexpectedly, dangerously, and obsessively to adversity in potentially escalatory ways." *Id.* at 11.

This danger is underscored by the seriousness of his pending case and the approaching trial (and the prospect of a potential prison sentence if convicted). In the words of the Seventh Circuit, the Defendant stands charged with multiple counts of cyberstalking and unauthorized intrusion into a cell phone; his "indictment, and the criminal complaint leading to it, allege an extreme online campaign of harassment against three different women"—harassment including "obsessive accusations and occasional physical stalking." [180] at 2. Likewise, "shortly after Storme was charged with electronically stalking one ex-girlfriend, police arrested him for physically stalking another, even while he was under strict supervision." *Id.* While previously on bond in this case, Defendant not only picked up another criminal case involving a fourth ex-girlfriend (whom he followed home in his car, resulting in a protective order against him), but he also violated his curfew over thirty times and attempted suicide. *Id.* All of this occurred while he was living with his mother, who was charged with serving as a third-party custodian, *see* [14]. In other words, his track record on pretrial release shows that, if released into his mother's care again (the proposed third-party custodian), he will remain a danger to others and the community.

While the Court remains heartened that the Defendant, *within a custodial setting*, is employing coping strategies with constant care, the record contains no evidence to suggest that those strategies (whatever they are) will work in the absence of such constant care (and Defendant has proffered no plan for care upon release), particularly as the trial approaches and the magnitude of the charges looms ever larger. Defendant concedes that his mental health treatment in custody has improved his mental health; he no longer evidences suicidal ideation, he has worked to implement stress-coping mechanisms, and he has begun to practice "radical acceptance." *See* [183] at 12. Yet, Defendant also conceded at the hearing on July 10 that he had no plans for continued treatment if released. Such concessions bolster this Court's decision to deny Defendant's current efforts to secure pretrial release.

Given his prior behavior while on pretrial release, and despite the proffered material submitted with his motion for reconsideration, the Defendant remains a risk of flight and a danger to others and the community.

4

## C. Conclusion

After a de novo review of the entire record, this Court again finds that the Defendant must remain detained pending trial. In so finding, the Court finds that there are no conditions of release that will reasonably ensure Defendant's appearance as required and the safety of others and the community. The Court thus denies Defendant's motion for reconsideration [183].

Dated: August 18, 2025    Entered:

John Robert Blakey
United States District Judge